## Commonwealth v. Banovich

*Alexander Ogle,* District Attorney, for Commonwealth.

*Nathaniel A. Barbera,* for defendant.

COFFROTH, P. J., June 30, 1971.—This is a summary proceeding in which defendant was charged with and convicted of speeding before the justice of the peace, brought here on certiorari. On July 3, 1970, defendant was found guilty by the justice after hearing. On August 20, 1970, defendant presented his petition for allowance of certiorari, alleging as the basis therefor that ". . . the proceedings before the justice of the peace were irregular and not in the course of orderly legal procedure required in order to properly find a party guilty of the offense charged which will be evidenced by a transcript of the justice of the peace, and the said irregularities and omissions in the proceedings are in derogation of the rights of your petitioner herein and which gives rise to injustice to your petitioner."

On the same day, allowance was granted ex parte. On September 1, 1970, return to the writ was made. On October 6, 1970, defendant's counsel filed exceptions to the record as follows:

"1. That the proceedings before the justice of the peace were irregular and not in the course of orderly legal procedure as evidenced by the transcript, in that the elements and requirements necessary to be proven in order to find a party guilty of speeding as determined

by radar under the statute, were not established as required by law.

"2. That the said proceedings before the justice of the peace were irregular in that the jurisdictional facts, as evidenced by the transcript, were not established in the case."

The record consists of the information charging a 55/65 speeding violation in Somerset Township detected by radar, the notice to appear, and a transcript which says:

"And now, July 3, 1970, defendant and his counsel Nathaniel A. Barbera appeared in my office, a full hearing was held. Attorney Barbera waived the reading of the complaint, Tpr. said no other vehicles in the area, defendant said there was, also that the radar reader pulled him over, the Tpr. said no, that he did that, he was in the chase car. I found defendant guilty as charged."

At the argument, defendant's counsel more specifically complained that the transcript did not show that the justice was the nearest available magistrate and that, therefore, he lacked jurisdiction, and further that the transcript did not contain a statement of the substance of the evidence against defendant showing proof of the elements of the offense: no certificate of radar accuracy, no evidence of sign posting or speed limit, no evidence of any violation.

In Commonwealth v. Makay, No. 10, C. D. 1970, a similar case, we reversed the conviction on the authority of Commonwealth v. Simons, 214 Pa. Superior Ct. 337. We did so reluctantly since the net result of such a rule is to discharge a person accused of crime simply because the justice's transcript omitted a summary of evidence of which there was surely some at the hearing. We considered a remand in that case for perfection of the record, but Simons did not

seem to allow for that and we had doubts of our own about the wisdom of such action. We now think Makay was incorrectly decided; we will review fully the rules of law governing such writs. We find:

(1) The foundation of the court's power to issue writs of certiorari is contained in Constitution article V, sec. 26, which provides as follows:

"Unless and until changed by rule of the Supreme Court in addition to the right of appeal under section nine of this article, the judges of the courts of common pleas, within their respective judicial districts, shall have power to issue writs of certiorari to the municipal court in the City of Philadelphia, justices of the peace and inferior courts not of record and to cause their proceedings to be brought before them, and right and justice to be done."

A similar provision appears in section 6 of the Minor Judiciary Court Appeals Act, 42 PS §3006. The fundamental purpose of the writ is to further "right and justice."

(2) Under Constitution article V, sec. 9, an appeal from the judgment of the justice of the peace to the court of common pleas in both criminal and civil cases is a matter of right. So is a writ of certiorari in civil cases: 42 PS §955. But the writ of certiorari in criminal cases is a matter of grace, requiring special allowance by the court. Constitution article V, sec. 26, supra, authorizing the writ says that the judges "shall have power" to issue; that is permissive not mandatory language: McGinnis v. Vernon, 67 Pa. 149. The Act of April 26, 1855, 42 PS §955 supra, dispensing with special allowance of the writ, applies only to civil cases, leaving the allowance still required in criminal cases: Commonwealth v. Antone, 22 Pa. Superior Ct. 412; Commonwealth v. Mountain, 25 Dist. 714; Rubel v. Paint Borough, 14 Dist. 117 (Somerset County,

Kooser, P. J.): Commonwealth v. Mattern, 24 C.C. 655. The allowance may be granted nunc pro tunc after issuance: Commonwealth ex rel. v. Butler (No. 1), 39 Pa. Superior Ct. 125; Commonwealth v. Matyak, 5 Sch. Reg. 110; Commonwealth v. Mitchell, 17 York Leg. Rec. 172 (1904).

In order, therefore, to obtain the special allowance, the defendant must "lay a ground for it before the court": Commonwealth v. Antone, supra, page 413. ". . . We have power to impose terms upon the allowance of a common law writ of certiorari after judgment. It is not a writ of right, and will never be allowed for merely technical errors which do not affect the merits": Ewing v. Thompson, 43 Pa. 372, 379. There should be more than informality or irregularity in the proceedings: it should further appear that substantial justice was not done: 2 Sadler, Criminal Procedure (2d Ed.) sec. 842, p. 961. In the absence of allowance, the writ may be quashed by the court on its own motion: Commonwealth v. Antone, supra; Commonwealth v. Mattern, supra. If allowance is secured on insufficient grounds, such as general averments of illegality, the writ may be quashed by the court on its own motion as improvidently allowed: Commonwealth v. Mountain, supra; as the court in Ewing, supra, said at page 379: "We cannot treat the writ as not allowed, but we can revise the allocatur and quash the writ, if there do not appear to be sufficient grounds for it."

As a matter of practice, the allowance in summary convictions has been perfunctory. Locally (see Pennsylvania v. Kirkpatrick et al., 1 Add. 193, 195 note), and at least in the past 30 years of our experience, the allowance has been routinely granted ex parte. The discretion to withhold allowance has lain dormant, unexercised. Yet it should not be so. The allowance of certiorari for technical and insubstantial reasons

tends to focus consideration upon such reasons instead of "right and justice"; disallowance offers a valuable means of preventing undue calendar congestion by the hearing of trivial matters, a legitimate basis for disallowance, a relevant consideration in this court today.

No certiorari should be allowed unless the petition for it sets forth some specific reason of such compelling character affecting jurisdiction or the merits as makes its issuance necessary to do "right and justice." And if such a writ is allowed without the assignment of a compelling reason, the writ should be quashed in order to nullify the improper allowance. Since the reversal of a judgment on certiorari has the effect of discharging the defendant, the cause for so doing must be weighty indeed.

(3) An appeal must be taken in criminal cases within 10 days, (42 PS §3005), and in civil cases within 20 days: 42 PS §3005. The Act of April 26, 1810, 42 PS §951, allowing 20 days for issuance of certiorari, seems by its terms to apply only to civil cases, and the lower courts have generally so held; there being no other statute imposing a time limit on issuance of the writ the common-law doctrine of laches has been held applicable in criminal cases: Commonwealth v. Bader, 31 D. & C. 693. But in Commonwealth v. Conn, 183 Pa. Superior Ct. 144, the court held, without discussion, that in the absence of fundamental deficiency or jurisdictional infirmity, a petition for certiorari presented more than 20 days after sentence may be dismissed on that ground. Whether the 20-day statute governs or whether laches is the rule (in which case it seems to us that we should not allow any greater time for certiorari than is allowed for an appeal), late allowance should not be permitted unless, in addition

to assigning a compelling reason for issuance, good cause for delay is given.

(4) Prior to the adoption of article V, sec. 26, supra, of the new Constitution, and section 6 of the Minor Judiciary Court Appeals Act of 1968, above cited, a defendant convicted in a summary proceeding could have either an appeal or certiorari, but not both: Commonwealth v. Bricker, 406 Pa. 422; Toth v. Bergstein, 207 Pa. Superior Ct. 101; Commonwealth v. Conn, supra. The same rule applies in civil cases: Firestone Auto Supply Stores v. Fitch, 46 D. & C. 185; Proposed J. P. Civil Rule No. 1015. The constitutional provision which authorizes the writ of certiorari "in addition to the right of appeal," a new phrase, has not been litigated in any reported case.

(5) It has become common practice in the State, by rule of court, for the party obtaining the writ to specify the errors complained of by filing exceptions to the record after the justice of the peace makes his return. Since the cause for issuance of the writ must in criminal cases, and should in civil cases, be stated before allowance, we declined to adopt the exception practice: Commonwealth v. Shaulis, 25 Somerset Leg. J. 130. That principle is now embodied in our rules of court promulgated September 14, 1970, no. 42, Miscellaneous 1970, which require that all exceptions to be considered by the court be filed prior to issuance of the writ. Those rules were adopted subsequent to issuance of the writ here; accordingly, we will consider the exceptions filed as part of the petition for allowance.

(6) On appeal, in both criminal and civil cases, the case is heard by the court de novo; the court makes its own determination and enters judgment. If defendant is found guilty in a criminal proceeding the court imposes an appropriate sentence. On certiorari, in

both criminal and civil cases, only the record of the justice is brought up for review by the court of common pleas: Swank v. Myers, 386 Pa. 331; Commonwealth v. Jakub, 182 Pa. Superior Ct. 418; Commonwealth v. Richardson, 174 Pa. Superior Ct. 171; Polis v. Raphael et ux., 160 Pa. Superior Ct. 544; Commonwealth v. Burall, 146 Pa. Superior Ct. 525; Commonwealth v. Benson et al., 94 Pa. Superior Ct. 10. Although the record may be amended to reflect truth, the appellate court is bound by the record and hears no evidence: Atkins v. Flaherty et ux., 17 D. & C. 2d 143, affirmed 189 Pa. Superior 550.

(7) The common-law writ of certiorari was originally a process of the King's Bench by which it reviewed the records of inferior courts and corrected their errors in order to confine them within the limits of their jurisdiction and to see that their jurisdiction was exercised with regularity according to law. Only the Supreme Court of Pennsylvania has the common-law powers of the King's Bench. Review of the proceedings of an inferior tribunal by writ of certiorari was originally limited to an inspection of the record for jurisdiction below and for correction of errors appearing on the face of the record; neither the opinion of the court below nor the evidence in the case formed any part of the record and the merits could not be inquired into on certiorari. This became known as "narrow certiorari" in the Supreme Court which later developed a "broad certiorari" in which the appellate court (Supreme and Superior) looked beyond the jurisdiction of the court below and regularity of the proceedings to determine by examining the testimony whether the findings of the court below are supported by evidence or whether it was guilty of an abuse of discretion in such connection or an error of law. The broad certiorari was always used in the appellate courts except in cases

where a statute expressly provided that there shall be no appeal, in which case only the narrow certiorari applied. See Absentee Ballots Case, 423 Pa. 504; Commonwealth v. Davidson, 412 Pa. 279, 281; West Conshohocken Borough Appeal, 405 Pa. 150; Deal v. Philadelphia Civil Service Commission, 405 Pa. 136; Bell Appeal, 396 Pa. 592; Dauphin Deposit Trust Co. v. Myers, 388 Pa. 444; Rand v. King, 134 Pa. 641; Election Cases, 65 Pa. 20; Chase v. Miller, 41 Pa. 403; Philadelphia v. Dortort, 205 Pa. Superior Ct. 211. Presumably narrow certiorari in the upper courts will now be a thing of the past by reason of the provisions of article V, sec. 9, of the new Constitution granting the right of appeal in all cases, and the provisions of section 204(a) of the Appellate Court Jurisdiction Act of July 31, 1970, 17 PS §211.204(a).

The constitutional grant of power in article V, sec. 26, of the Constitution for the issuance of writs of certiorari by the court of common pleas to a justice of the peace, by the use of the phrase "to cause . . . right and justice to be done" suggests a broader type of inquiry than with the common-law writ, and that the court should deal with the merits of the case so far as that can be done on the basis of the record without making factual inquiries or attempting to determine credibility. See Esakovich et al. v. Groudine, 141 Pa. Superior Ct. 365. But the requirements and scope of review of the record of a justice of the peace on certiorari has its own curious history and cannot be rested upon the broad-narrow dichotomy just discussed.

In civil cases, the review on certiorari to a justice is narrow, reaching only questions of jurisdiction and regularity of the proceedings as shown by the record, as in the common law writ. In Commonwealth v. Dortort, supra, a civil case of certiorari to a justice of the

peace, the court said, quoting Mr. Chief Justice Sharswood in Carpenter's Appeal, 11 WNC 162:.

" '. . . upon a common law certiorari, as this is, we can only examine the record, to see if the court had jurisdiction and the proceedings were regular. This has been so often decided, that it is to be hoped that some time or other parties will leave off bringing such cases as this into court, with the idea that they may get the proceedings reversed on the merits.' "

The court, therefore, concluded that in a civil case no statement of the evidence is required in the record of the justice. Accord: Ott v. Jordan, 116 Pa. 218 (1887); Carlisle v. Baker, 1 Yeates 471 (1795); Battles v. Nesbit, 149 Pa. Superior Ct. 113 (1942), in which the court stated that the justice's docket in a civil case need show only that a witness or witnesses were sworn and testified, thus indicating procedural regularity: Taylor v. Tudor & Free, 81 Pa. Superior Ct. 306, 309 (1923).

But the rule in criminal cases has developed otherwise; in such cases "there must be a *record* of the whole proceedings wherein the justice must set forth the particular manner and circumstances, so as if he be called to account for the same by a superior court, it may appear that he has conformed to the law, and not exceeded the bounds prescribed to his jurisdiction": Commonwealth v. Borden, 61 Pa. 272, 275 (1869). The same case points out, page 276, that it is sufficient if the "substance" of the testimony is given—the essential part, the main or material part. The court states that the English cases were more strict in their requirements of the record of the testimony but that such strictness would defeat most summary convictions, (page 276) and is, therefore, relaxed in Pennsylvania. In Commonwealth v. Nesbit, 34 Pa. 398 (1859), cited with approval in Borden, the court said that the judgment will be reversed if there is not a return of evi-

dence, as distinguished from legal conclusions, to enable the superior court to determine whether an offense was committed: Reid v. Wood, 102 Pa. 312; Commonwealth v. Dortort, supra; Commonwealth v. Pennsylvania Milk Products Corp., 141 Pa. Superior Ct. 282; Commonwealth v. Barbono, 56 Pa. Superior Ct. 637; Commonwealth v. Divoskein, 49 Pa. Superior Ct. 614; Commonwealth v. Ayers, 17 Pa. Superior Ct. 352; Commonwealth v. Fondak, 44 D. & C. 2d 337; Commonwealth v. D'Ambrosio, 16 D. & C. 2d 485; Commonwealth v. Ressler, 81 York Leg. Rec. 1; Commonwealth v. Reist, 79 York Leg. Rec. 167; Commonwealth v. McFate, 14 Lawrence L. J. 1 (1954). In a number of older civil landlord and tenant cases, the courts applied the criminal rule and required a record of essential findings: Davis v. Davis, 115 Pa. 261; Graver v. Fehr, 89 Pa. 460; Mikulski v. Ziolkowski et ux., 73 Pa. Superior Ct. 72; Ballou v. Mehring, 28 Pa. Superior Ct. 156; Hickey v. Conley, 24 Pa. Superior Ct. 388; Wilke v. Campbell, 5 Pa. Superior Ct. 618. But apparently these were regarded as a special situation: Givens v. Miller, 62 Pa. 133, 136. See Snyder v. Carfrey, 54 Pa. 90. Similarly, in a number of older cases involving prosecutions for collection of a municipal penalty the court treated the proceedings as criminal in character, applying the criminal rule: New Castle v. Genkinger, 37 Pa. Superior Ct. 21; Commonwealth v. Davison, 11 Pa. Superior Ct. 130. But it has been settled, out of historical if not rational considerations, that such proceedings are civil in character: Commonwealth v. Ashenfelder, 413 Pa. 517. Accordingly, the civil rule should be applied to such cases: Philadelphia v. Dortort, supra.

(8) A number of reasons have been given by the courts for the stricter rule in summary convictions. It is said to be a "safeguard against unjust conviction

for crime": Battles v. Nesbit, supra. In Commonwealth v. Simons, supra, pages 340-341, it said that "summary proceedings must be strictly pursued since they are not only penal in nature but also because they deny the right of trial by jury." Fundamentally, the rule seems to be grounded upon distrust of the justice of the peace. In Commonwealth v. Cannon, 32 Pa. Superior Ct. 78, 81, the court stated:

"This is not merely a formal or technical rule of summary convictions, but most essential and substantial. No citizen could have any sort of protection against the ignorance or wickedness of inferior magistrates if these were authorized to convict citizens of offenses, and yet allowed so to record their proceedings that the very act done cannot be ascertained, and thus their judgment cannot be tested by their judicial superiors."

The stricter criminal rule was recognized early in Pennsylvania as a development from older English law: Commonwealth v. Borden, supra. Perhaps, at that time, some special attention to summary convictions on certiorari was necessary to safeguard the citizen from unjust conviction because then no appeal from summary convictions was generally available; the appeal was first generally provided for in article V, sec. 14, of the 1874 Constitution and by Act of April 17, 1876, P. L. 29, 19 PS §1189. By the latter act, the appeal became available upon special allowance of the court and the procedure on appeal was de novo. The purpose of de novo review is to give defendant broad protection against an arbitrary exercise of power, broader than was affordable on certiorari: Commonwealth v. Cronin, 336 Pa. 469, 473-4; Virnelson License Case, 212 Pa. Superior Ct. 359, 367. The criminal rule on certiorari thus became unnecessary as a protection from unjust conviction, because

defendant could appeal and have the merits of the case tested in full. That the appeal was by special allowance only is of no significance in this regard because certiorari also required special allowance. This inter-relationship between certiorari and appeal was recognized in Commonwealth v. Bey, 150 Pa. Superior Ct. 93, 96, where the court stated:

"If defendant had good reason to have his case reheard on the merits, he could have applied for the allowance of an appeal to the Court of Quarter Sessions. With the privilege thus to apply for hearing de novo before the Court of Quarter Sessions, the courts, on certiorari, will not accept merely astute reasoning, or be too captious in order to set aside the judgment of a magistrate. The proceedings, of course, must be regular and sustain the conviction."

The stricter criminal rule became even less needed following the adoption of article V, sec. 9, of the new State Constitution and the Minor Judiciary Court Appeals Act of December 2, 1968, 42 PS §3001, et seq., guaranteeing the appeal without special allowance. Accordingly, we will find that the rule has been greatly ameliorated.

(9) In order to consider the merits of the offense at a time when the de novo appeal was not available, the courts found the need of a record from courts not of record. So the "substance" of the evidence was required in criminal cases in order to provide a basis for review. But this requirement put a strain upon the magistrate who had no full record and upon his limited skill. It was one thing to expect him to know the essentials of the crime charged and to judge whether all essentials were proved; it was still another, even if he met the first test, to expect him to write a complete statement of the "substance" of the evidence, as distinguished from statements of legal conclusion:

Commonwealth v. Nesbit, 34 Pa. 398. The courts recognized the danger of establishing excessively strict standards which could not be met. "Captious" exceptions should not be allowed: (Finney v. McMahon, 1 Yeates 247, 248); courts should not be "hypercritical" in judging transcripts: (Commonwealth v. Davison, supra, page 135): we should not be "astute" in discovering defects in such proceedings: Commonwealth v. Burkhart, 23 Pa. 521, 523.

We thus encounter the competing interests of society and of the individual. We frequently state as our core of value that as between convicting the innocent and discharging the guilty, we prefer the latter; but there is a great danger to society as a whole from any legal system or rule of law which does either with any degree of frequency. This is as true of minor summary offenses as it is of misdemeanors and felonies. Summary cases are numerous and provide for many people their first, if not only, contact with the judicial system; upon that experience they form their estimates of both the system and of right and wrong. It is axiomatic but frequently overlooked that courts not only judge, they teach; they help set the tone and foundation for society's basic values. Whenever the judgments of courts are frequently unrelated to the truth and merits of the cause, but are grounded upon technical or administrative reasons unrelated or seemingly unrelated to those larger considerations, they generate not only disrespect for the courts but a general atmosphere that "getting away with it" is standard procedure. The court in Commonwealth v. Borden, supra, page 276, recognized that the law should not require "a strictness which would defeat most summary convictions." So, while penal transcripts are looked at more strictly than civil ones to protect the innocent (Snyder v. Car-

frey, 54 Pa. 90, 93), an excessive strictness produces its own evil.

The courts have long known that technical requirements of transcripts are beyond the skill of most justices. That is why the courts in the last century relaxed the English rule and required only the "substance" of the evidence, thinking that they were thus imposing a more realistic requirement: Commonwealth v. Borden, supra, page 276; Commonwealth v. Nesbit, supra, page 403. In Snyder v. Carfrey, supra, page 93, the court said: "Very few aldermen and justices of the peace can make up records upon penal statutes which can withstand the criticisms of a certiorari . . ." That was in 1867. It is still true today to a great degree. A review of the reported criminal certiorari cases reveals that practically all were dismissed on technicalities, precisely the evil we complain of above. And in terms of respect for law, the courts must take care that they do not make their own unwitting contribution to lawless attitudes. Such widespread social notions are long in coming and are founded not upon recent cataclysms, but upon the slow accumulation of specific instances over the years. In the same way the law is built as well as destroyed, just as surely as the slow, continuous drip of water inexorably fissures the greatest of rocks.

We are many times told that the only way to teach the minor judiciary the error of their ways is to dismiss cases not supported by proper transcripts. See Commonwealth v. Lewis, 10 D. & C. 459. But that is a hopeless dream. The therapy hasn't worked for over a century. Worse are the harmful social consequences of that "educational" effort, as above pointed out. Instead of educating the squires to make better transcripts, the danger is that we may "educate" people to think that there are numerous and easier ways of avoiding

punishment for crime than by being not guilty. In Pennsylvania, the facts of life are slowly being recognized. New Constitution article V, sec. 12(b), and the Minor Judiciary Education Act of February 24, 1970, 42 PS §1211, et seq., are indications that the public realizes the need for more systematic training of justices of the peace. Whether this effort, which falls short of meeting the learned in the law requirement for judges, will be effective remains to be seen, but society is at least beginning to recognize the problem and to deal with it more realistically and more constructively.

Accordingly, in a further effort to make transcript requirements in criminal cases more realistic, it was early said that the "substance" of evidence rule may be satisfied if the justice narrates the substance *or* "says the facts in the complaint are true" thus making his findings by "reference to the complaint" without further repetition: Givens v. Miller, 62 Pa. 133, 135; Wilke v. Campbell, supra. In general accord are Commonwealth v. Pennsylvania Milk Products Corp., Mikulski v. Ziolkowski, Ballou v. Mehring and Hickey v. Conley, all supra.

In Commonwealth v. Davison, supra, the court pointed out that it had been previously held that where the record does not set forth in so many words that defendant was convicted of the offense, a finding to that effect is implied in giving judgment and suggested that by an extension of that principle we might be justified in also implying from the entry of judgment that defendant was found guilty as charged in the information, thus supplying by reference the requisite findings to support the conviction. That sensible dictum was never adopted. But a finding that defendant was "guilty of the offense charged" has been held to be a sufficient finding by reference. In Common-

wealth ex rel. Riley v. Hudock, 37 Pa. Superior Ct., 176, 178, the court said:

"Had the complaint as thus entered by the justice in his record set forth all the elements sufficient to constitute an offense under the statute and within the jurisdiction of the justice, then a finding that the *defendant was guilty of the offense charged* and the entry of judgment against him for the penalty would have been sufficient." (Italics supplied.)

In Commonwealth v. Barbono, supra, a summary conviction case, the transcript stated that after hearing defendant was "found guilty as charged with illegally having in his possession 172 registered beer bottles and 3 beer boxes" and that defendant was sentenced. The court then said, at page 642:

"While the record of the justice states that the defendant was found guilty as charged, yet the immediate context individuates the part of the charge of which he was found guilty as 'illegally having in his possession 172 registered beer bottles,' etc., and it cannot be implied with certainty that he was found guilty of any other charge."

It was then concluded that the justice's finding did not state a penal offense. In Commonwealth v. Miller, 48 D. & C. 2d 389, a summary conviction case, the transcript showed that the justice read the information to defendant in the presence of the arresting officer who testified that the matters in the information were correct, which the court held to be a sufficient finding of facts to support the conviction.

It is thus apparent that in civil cases it is not necessary that the record show any findings, but that in criminal cases such findings are required, either in the form of a narration of the substance of the evidence or a finding express or implied of the truth of the averments of the complaint. The criminal rule is satisfied

if the justice finds defendant "guilty as charged," that being by implication a finding by reference to the information or complaint that the facts therein averred are true. In the instant case, the transcript states: "I found defendant guilty as charged." A reading of the complaint shows that its averments are self-sustaining. All of the elements of the offense are in the complaint: that defendant drove at 65 miles per hour in a 55 mile-per-hour zone in Somerset Township, Somerset County, Pa., that the speed was timed by an officer in uniform by approved radar equipment tested for accuracy and found accurate within 30 days; that the required speed and radar signs were posted and that the magistrate is in Somerset Township and was the nearest available. Defendant did not suggest that the information was insufficient. To require more than a finding of "guilty as charged" would exalt form over substance. Of course, an insufficient information in such case is ground for reversal. See New Castle v. Genkinger, 37 Pa. Superior Ct. 21; Commonwealth v. Cannon, supra; compare Commonwealth v. Hunter, 107 Pa. Superior Ct. 513. In Commonwealth v. Simons, supra, there was no such finding of guilt "as charged" and that decision did not govern Makay nor does it govern here.

There is another reason for refusing relief in this case. The petition for the writ contains only general averments of irregular procedure "which will be evidenced by a transcript." The exceptions also state only generalities that the proceedings were irregular, that elements of the offense were not proven as required by law, and that the jurisdictional facts were not established "as evidenced by the transcript." There is no specific error stated, no averment of denial of due process or other basic right, no assertion of innocence.

This is precisely what we disapproved in Commonwealth v. Shaulis, supra: having the writ issued as of

course, playing the odds that the justice of the peace is not sufficiently skillful to make a proper return, then nitpicking the transcript after filing in order to have the judgment reversed for defects of form. The same thing was done in Commonwealth v. Mountain, supra. The court held that the special allowance, having been secured only on general averments of illegality, was improvidently granted and quashed the writ on its own motion. We do the same here.

The rules and regulations governing transcripts in summary convictions must be synthesized with the judicial discretion we have in granting or refusing the writ in the first place, and with the higher command of the Constitution to do "right and justice." The causes which justify the exercise of that discretion to grant allowance must be substantial enough to raise an issue of right and justice and substantial enough to be discerned *before* the writ issues; opportunistic discoveries made after an unskillful justice of the peace returns a technically deficient transcript are not substantial causes.

Finally, the writ was applied for and issued too late and no explanation or excuse for delay has been advanced.

Now, June 30, 1971, the judgment of the justice of the peace is affirmed. Costs on defendant.