WARNER, Judge.
The appellant was convicted of manslaughter. She argues in her appeal that the court erred in failing to suppress her confession which was given after her mother had asked the arresting officer not to question her daughter. We conclude that Miranda rights are personal in nature, and that the mother’s request of the officers was ineffectual to invoke Miranda’s constitutional guarantees on behalf of her 19 year old daughter. We therefore affirm.
Appellant’s former boyfriend, her severed co-defendant, was picked up on the night of the grisly crime in this case and subsequently implicated appellant in the victim’s death. Two detectives, Sheridan and Vallerio, arrived at appellant’s home and informed her mother that they were there on a serious matter. The mother then let the officers into the house. When the detectives entered, appellant was sitting at the dining room table, and the officers informed appellant and her mother that the appellant was implicated in a murder. Sergeant Sheridan then placed appellant under arrest for murder. He advised the appellant of her Miranda rights, reading each right one at a time and asking appellant if she understood them. Each time appellant nodded her head “yes.” The appellant also signed a Miranda rights card, which was witnessed by her mother and initialed by Vallerio. Subsequent to the Miranda warnings, Sheridan asked appellant where the knife (which was used in the murder) was located. The appellant and Vallerio went to the attic where appellant pointed to its location. While Sheridan remained downstairs with the mother, she inquired of him whether she should obtain an attorney for her daughter. Sheridan told her that her daughter needed one “very much.” The mother then made some telephone calls, but Sheridan was never advised that an attorney had been obtained. When Vallerio and appellant returned, Vallerio testified that the mother advised Vallerio that she was on the telephone attempting to obtain counsel for her daughter. Vallerio admitted that the mother then told them to stop questioning the appellant, and the officers both stated that they would stop talking to her. Vallerio also testified that the appellant never indicated that she did not want to discuss the case or that she wished to speak to an attorney. He did not see the appellant say anything or acknowledge her mother’s statement that appellant not be questioned. To the contrary, the mother testified that she turned to her daughter and told her not to talk to the officers until she talked to a lawyer, to which appellant “nodded her head and said okay or something of that sort.”
The appellant was then taken to the stockade by sheriffs deputies, while Sheridan and Vallerio followed along. However, the appellant was not booked at the stockade because the probable cause affidavit had not been completed. Sheridan and Vallerio then took the appellant back into their custody and placed her in their car. Sheridan initiated a general conversation with the appellant while they were traveling. He told her that she was in serious trouble and asked her if she would like to talk about it. The appellant *162 responded affirmatively. They returned with the appellant to the murder scene and videotaped her statement of what had transpired. It is this videotape that appellant sought to suppress.
Appellant testified that she remembered the officers reading her the Miranda rights at her home and that she basically understood what was happening. She also remembered cooperating with the officers in locating the knife. She knew that her mother told her that she was getting a lawyer and not to talk to the officers to which she said she nodded her head. When they took her to the stockade and then to the crime scene, the officers were not mean or impolite to her, and they never told her that she had to talk with them. On the videotape she acknowledged that the officers had not made her any promises and that she was making the tape of her own free will.
The trial court ruled that the testimony from the officers was credible, that the appellant was read her rights, and that she had an intelligent understanding of them. Moreover, the court concluded that no threats or promises were made to induce her to make a statement. While the court acknowledged that the mother had asked that the officers not question her, the court determined that these constitutional rights are personal rights which cannot be invoked by a family member on behalf of a competent adult. Satisfied that appellant did not invoke those rights herself, the court denied the motion to suppress.
The appellant argues that she made an equivocal request for counsel and indicated that she did not wish to speak to the police. Thus, all questioning of appellant had to cease, and the officers could only clarify the appellant’s wishes. Owen v. State, 560 So.2d 207, 211 (Fla.), cert. denied, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990). The evidence appellant relies upon is the mother’s statements and the appellant’s nodding of her head. However, as to this factual matter there is a conflict in the evidence, as the officers testified that they never saw nor heard any words or movement by appellant. As a reviewing court, we must interpret the evidence and reasonable inferences derived therefrom in a manner most favorable to sustaining the trial court’s ruling. Medina v. State, 466 So.2d 1046, 1049-50 (Fla.1985). There is competent substantial evidence that appellant did not herself indicate a desire for counsel or to remain silent, and we sustain the trial court’s factual findings.
Although the mother told her daughter not to talk to the officers and that she would get an attorney for her, the mother cannot invoke appellant’s fifth and sixth amendment rights on her behalf. “[T]he privilege against compulsory self-incrimination is, by hypothesis, a personal one that can only be invoked by the individual whose testimony is being compelled.” Moran v. Burbine, 475 U.S. 412, 433 n. 4, 106 S.Ct. 1135, 1147 n. 4, 89 L.Ed.2d 410, 428 n. 4 (1986). Similarly, the individual must assert the right to counsel. Id.; see also United States v. Scarpa, 897 F.2d 63, 69 (2d Cir.), cert. denied, 498 U.S. 816, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990); Commonwealth v. Lowery, 276 Pa.Super. 569, 419 A.2d 604, 608 (1980). We are unable to find any case where a third party has been allowed to invoke Miranda rights on behalf of a competent adult.
Appellant further contends that reversal is required on the basis of Haliburton v. State, 514 So.2d 1088 (Fla.1987) (Haliburton II) (on remand from Florida v. Haliburton, 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986), which vacated and remanded Haliburton v. State, 476 So.2d 192 (Fla.1985) (Haliburton I), in light of Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). In Haliburton II, the defendant had been arrested and was taken to the police station. See Haliburton I, 476 So.2d at 193 (setting forth facts). Meanwhile, the defendant’s sister had retained an .attorney to represent him. The attorney called the police station, requesting that any questioning of the appellant stop. Counsel later arrived at the station and asked to speak with the defendant but was not allowed to do so. During this time, the defendant was giving a statement to the police who did not inform him of the presence of the attorney or the attorney’s desire to speak with him. The Haliburton II court held that deception or *163 concealment on the part of the police of the critical fact that an attorney who has been retained on defendant’s behalf is trying to advise him is a violation of Article I, Section 9, of the Florida Constitution. Haliburton II, 514 So.2d at 1090.
In the instant case, however, the police withheld nothing from the appellant. The mother’s indication that she was going to retain counsel was made in the appellant’s presence. Furthermore, there is nothing in the record to suggest that counsel was actually obtained and available at any time prior to appellant’s statement. The foundation of Haliburton II was based on what was deemed deception or concealment by the police. No such conduct is present in this case.
The testimony of the appellant makes clear that the statement given by the appellant was voluntarily and intelligently made. There was no deception or coercion, and the court was correct in denying the motion to suppress.
The appellant also claims that the court erred by failing to give an instruction on culpable negligence. We find the issue to be without merit.
Affirmed.
GUNTHER, C.J., and PARIENTE, J., concur.