419 A.2d 604

**COMMONWEALTH of Pennsylvania**

v.

**Frank LOWERY, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 28, 1980.

Filed April 11, 1980.

Petition for Allowance of Appeal Denied Oct. 29, 1980.

Joel W. Todd, Philadelphia, for appellant.

Cynthia Severinsen, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, O'BRIEN and CIRILLO, JJ.*

WATKINS, Judge:

This is an appeal from the Court of Common Pleas of Philadelphia County, Criminal Section, by the defendant—appellant, Frank Lowery, after conviction by a jury of charges of murder of the first degree, possession of an instrument of crime, robbery and criminal conspiracy. The defendant was sentenced to life imprisonment on the murder conviction. The sentences on the other crimes were to run concurrent with the life sentence on the murder conviction.

On September 30, 1976, the defendant and two other males agreed to rob a vegetable store located at 1607 West Susquehanna Avenue, in Philadelphia, Pennsylvania. Shortly after 4:00 P.M. on that date they entered the store. Defendant served as a lookout and carried a pistol. One of the other participants, an Anthony Jackson, carried a shotgun into the store with which he shot and killed the store's proprietor during the robbery. Defendant was aware of the fact that Jackson was carrying the shotgun at the time of the holdup. Defendant was apprehended a short time after the holdup but was released when an eyewitness to the robbery informed police that defendant was not the one. On September 11, 1976, at 1:15 P.M., defendant accompanied by his attorney, surrendered himself to police authorities at the District Attorney's office after he learned that the police were looking for him. At this time defendant was instructed by his attorney not to make any statement in the absence of the attorney. Defendant was then taken to the Police Administration Building where, after being provided his *Miranda* Warnings, he gave a statement implicating himself in the crime. Defendant had never requested an attorney during the questioning although he had been advised that he need not answer questions in the absence of one. On the way to the police building he had asked a Detective Ellis about the advisability of one in defendant's position giving a

---

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania, and Judge VINCENT A. CIRILLO of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

statement. The court below held that this fact supported the contention that defendant intended to relinquish his right to counsel. In any event at 7:43 P.M. on September 14, 1976 defendant signed a written statement implicating himself in the crime. Defendant filed a motion to suppress the statement but the court below denied defendant's motion and the confession was used against him at trial.

Defendant's first assignment of error on appeal is that the court below erred in failing to suppress his confession because his Sixth Amendment rights to counsel had been violated when the police questioned him in the absence of his attorney. Defendant argues that once the police knew that defendant had retained an attorney they should not have been permitted to question him in the absence of the attorney even if defendant had agreed to waive his right to an attorney during questioning. An inculpatory statement will not be suppressed even though obtained in the absence of counsel, where a defendant's constitutional rights have been fully explained and knowingly, voluntarily and intelligently waived. *Commonwealth v. O'Bryant*, 479 Pa. 534, 388 A.2d 1059 (1978).[1] A defendant's right to counsel is the defendant's right and not the attorney's right. Therefore a person accused of a crime who has already engaged counsel may with full knowledge of his rights effectively waive his right to have counsel present while he is questioned by the police. *Commonwealth v. Hawkins*, 448 Pa. 206, 292 A.2d 302 (1972). After a full hearing the court below held that defendant waived his right to counsel with full knowledge of his rights. The fact that defendant initiated a conversation with the police detective on the way to the police building during which he inquired about the advisability of giving a statement supports the court's finding that defendant desired to give such a statement. A review of the record demonstrates that the court below had sufficient facts before it to enable it to find as it did.

1. See also, *Commonwealth v. Kesting*, 274 Pa.Super. 79, 417 A.2d 1262 (1979).

In *Commonwealth v. Hilliard*, 471 Pa. 318, 370 A.2d 322 (1977), the majority of the court reversed defendant's conviction and ordered a new trial. There were two grounds for the new trial identified by the writer of the lead opinion in that case. The writer of the lead opinion held that a statement taken from the defendant during a custodial interrogation when the defendant had retained an attorney who had been denied access to the defendant during the interrogation and who had expressed a desire to the police to be present during the interrogation was inadmissible at trial and constituted a denial of defendant's *Miranda* rights despite the fact that defendant had expressed a desire to waive his *Miranda* rights. In such a case the waiver was invalid. However, only two other Justices agreed with this reasoning and therefore the principle enunciated by the lead opinion was not adopted by a majority of the Supreme Court. It should also be noted that in *Hilliard*, supra, the defendant's attorney was present at the police station during the questioning of the defendant, had asked to see the defendant but was denied access to him and had expressed his desire to the police that the defendant not be questioned unless he was present during the questioning. In our case the attorney had not expressed a desire to the police to be present during the interrogation, had not been denied access to the defendant by the police and the defendant had not requested counsel during the interrogation. Therefore, even if the opinion of the lead writer in *Hilliard*, supra, had been adopted by a majority of the Court it is apparent that our case is readily distinguishable from *Hilliard* on its facts. In *Commonwealth v. Lark*, 482 Pa. 292, 393 A.2d 1112 (1978), a case in which three Justices joined an Opinion in Support of Reversal because the police questioned a defendant in the absence of his attorney, there had been an express agreement between the police and defendant's attorney that the police would not question defendant and the police violated the agreement. In our case there was no such express agreement and the fact that defendant asked the question that he did while in the police vehicle indicated that defendant initiated the conversation leading up to his statement.

For this reason we hold that defendant's rights were not violated when the statement made by him in the absence of his counsel was admitted into evidence against him at trial.

Defendant also argues that the Commonwealth failed to sustain its burden of showing that defendant exercised a knowing and intelligent waiver of his constitutional rights when he gave the statement to the police. To determine the voluntariness of a statement given to the police the totality of circumstances surrounding the statement must be examined, including: (1) the duration and methods of interrogation; (2) the conditions of confinement; (3) the manifest attitudes of the police towards the defendant; (4) the defendant's mental and physical condition; (5) and any other condition which may drain defendant's powers of resistance to suggestion or to undermine his ability to exercise free will. *Commonwealth v. O'Bryant*, 479 Pa. 534, 388 A.2d 1059 (1978). In our case the defendant testified that during his interrogation the policeman who was questioning him "slapped" and "punched" him. Defendant also claimed that he had requested an attorney during the interrogation but that the police told him he could not have one. The suppression court did not find this testimony credible and the record supported this finding. Where a suppression court has made explicit findings of fact we are bound to accept them unless they are wholly unsupported by the record. *Commonwealth v. Willis*, 483 Pa. 21, 394 A.2d 519 (1978). Since it was testified to below by the police that defendant had been read his *Miranda* rights, had never indicated that he wished an attorney or desired to stop the questioning and because he had initiated the conversation himself we find that the court below did indeed have sufficient facts before it to enable it to find as it did. Turning to the circumstances of the case we find that defendant surrendered at 1:15 P.M., was interviewed at 2:30 P.M. and that the interview ended at 4:10 P.M. An interview of one hour and forty minutes is not of such an extensive duration that we can hold that it violated defendant's *Miranda* rights per se. Thus, the duration of the interview did not break down

defendant's free will and cause him to confess. The court found as a fact that no threats, promises or physical force were used on defendant to make him waive his rights and give the statement. The defendant did not appear drugged or intoxicated when he gave the statement. Although defendant was confined when he gave the statement, this fact alone, without more, would not tend to deprive defendant of his free will. In any event he had been in police custody only for a period of approximately one hour and fifteen minutes when he began his statement. Under these circumstances we fail to find that defendant was deprived of his free will when he gave his statement to the police. As such his statement was given voluntarily and knowingly as he had been provided with a reading of his *Miranda* rights and chose to waive them. Defendant now argues that because his attorney instructed him at 1:15 P.M. to say nothing in his absence that defendant could not have knowingly and voluntarily waived his *Miranda* rights at 2:30 P.M. As stated above the defendant's *Miranda* rights are personal to him and a defendant is always free to waive them and to disregard his attorney's advice. That is exactly what defendant did in the instant case and we find that his waiver was both knowing and voluntary.

██ Defendant also claims that his statement should be suppressed as a result of an unnecessary delay between his arrest and his preliminary arraignment. Defendant was arrested at 1:15 P.M. when he turned himself into the police at the District Attorney's office. He was preliminarily arraigned at 7:23 P.M. Defendant argues now that the delay between 4:10 P.M. and 7:23 P.M. was unnecessary. It would appear that he is admitting that the delay up to 4:10 P.M. was necessary. In any event defendant was arraigned six hours and eight minutes after he was arrested on October 14, 1976. *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1978), set May 16, 1977 as the effective date of the six hour rule. Since defendant's arrest and preliminary arraignment antedated the *Davenport* rule we find that this contention has no merit. Defendant attempts to argue that

the delay from 4:10 P.M., when he gave his oral statement, until 7:23 P.M. when he signed a written statement based upon his oral statement, was the relevant period of time during which the Commonwealth violated his rights to a speedy arraignment as set forth in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), which enunciated the rule prior to *Davenport*. The incriminating statement was concluded by 4:10 P.M. Whatever delay that may have occurred after the statement was given is irrelevant as the purpose of the rule is to prevent the coercive effect that a long period of time has on a person who has been arrested insofar as giving an incriminatory statement is concerned. *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979).

■ Defendant also claims that his statement should have been suppressed as the product of fraud or mistake because a detective had informed defendant's counsel that he had no intention of questioning the defendant. He never told the attorney that other policemen would not question the defendant. Defendant claims that his attorney was misled by the police. The record shows that defendant's attorney asked the detective what his intentions were regarding defendant. The detective told the attorney that his instructions were to transport the defendant to the Police Administration Building where defendant would be processed and that was all the detective would have to do with the case. The attorney then warned the defendant not to make any statements in his absence. The detective stated that he would not be interviewing the defendant but assumed that defendant's attorney knew that defendant would be interviewed as part of "processing" and that that was the reason defendant's attorney advised him to remain silent. We fail to see any fraud or mistake, here on the part of the police. In any event since we have held that a defendant may waive his *Miranda* rights despite his attorney's advice and have held that defendant did so in the instant case we find no merit in this contention.

The defendant also argues that he was denied the effective assistance of counsel at the suppression hearing because the suppression court had determined that the defendant's testimony was not credible before the hearing was over. At the hearing defendant testified that he had been beaten by the police and that the signature on the waiver card was not really his. Two police detectives testified to having seen defendant sign the waiver card and a handwriting expert testified that the signature on the card was that of the defendant. After the conclusion of the testimony but prior to closing arguments a side–bar conference was held of which we do not have a record. Defendant's attorney later alleged that the court indicated bias at the side–bar. He claimed that the court had expressed an opinion at the side–bar conference to the effect that defendant's testimony was not to be believed. After the entire proceeding the following discourse took place between the court and defendant's attorney:

"MR TODD  It has to be on the record. Your Honor indicated before the close of evidence and before argument you disbelieved the defendant and you felt that statements made as to beatings were, quote, 'scripted', unquote, because of contact the defendant would have at prison with the, I believe Your Honor referred to it as the prison bar.

"THE COURT:  Sir, I am now telling you that you are violating a confidence of this Court. Fortunately for me, then, in view of your statement, it was made in the presence of the District Attorney and yourself.

"Now I made that statement, I told you in advance, after testimony, and I concluded it; that is all, sir, I will hear from you on the subject."

Defendant claims that the court, therefore, committed error because it made its decision before it heard closing arguments on the matter. However, the defendant then had the benefit of a full and complete closing argument by his attorney on his behalf.

580

A defendant has a constitutional right to summation whether the case is argued before a jury or before a judge sitting without a jury and denial of that right requires the granting of a new trial. *Commonwealth v. McNair*, 208 Pa.Super. 369, 222 A.2d 599 (1966); *Commonwealth v. Miller*, 236 Pa.Super. 253, 344 A.2d 527 (1975). In both *McNair* and *Miller*, the defendant was denied the opportunity to have a closing argument presented on his behalf. In *Miller* the court indicated that it didn't think that argument was necessary because only a credibility issue was involved. Defendant's counsel did not insist on an argument because of the court's statement. The court then found the defendant guilty of the charge. At that point defendant's counsel motioned for a new trial on the grounds that defendant had been denied his right to a closing argument. We agreed with the defendant in that case and reversed his conviction. Unlike the situation in *Miller* where the court had indicated unequivocally that it had made up its mind on the credibility issue and that any argument by defendant's counsel would not alter the decision, we have no such situation here. The court may have expressed doubts about defendant's credibility at side–bar but we have no record of what was actually said. More importantly the court did not forbid the defendant's counsel from presenting oral argument as it did in *McNair*, supra, nor did it discourage oral argument as it did in *Miller*, supra, nor did it ever indicate that oral argument could not change its mind on the credibility issue. Defendant asks us to plunge into the world of the subjective and rule that the court had made up its mind prior to the oral argument. This we cannot do. It is probable that any fact finder, after hearing conflicting versions of the same incident from different witnesses, will have formed certain "impressions" or "opinions" on the credibility of those witnesses immediately after hearing their testimony.

Whether these "impressions" are formed after hearing the oral arguments of counsel or after hearing only the testimony is unimportant. What is important is that the fact–finder retain an open mind until after he had heard the oral

arguments. It could very well be the case that a fact finder will have a definite opinion on a witness' credibility immediately after hearing the witness testify but change that opinion when, during oral argument, counsel points out something to the fact finder that causes him to change that opinion. It is often impossible to state with certainty the exact point when one forms an opinion on any matter and we refuse to attempt to do so here. Unless it can be shown that a fact finder had a definite opinion on a matter prior to hearing any testimony or arguments bias cannot be proven. We hold today that where there is nothing to indicate that the fact finder did not hear and consider the oral argument, it cannot be held that the defendant was denied his constitutional right to oral argument. Furthermore, merely because a fact finder has formed certain "impressions" *after* hearing testimony but *before* oral argument does not prove that it failed to consider the oral argument.

Defendant also claims that his conviction should be reversed because the Commonwealth failed to disclose certain statements made by witnesses to the defendant prior to trial. Defendant filed a motion for pre–trial discovery on December 9, 1976 requesting the inspection of statements made by prospective Commonwealth witnesses. Defendant filed another such pre–trial motion on March 16, 1977. Both requests were denied. Under *Rule 310 Pennsylvania Rules of Criminal Procedure* (now amended to *Rule 305* a defendant is not entitled to the "pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth". Thus, defendant's two pre–trial requests for the witnesses' statements were properly denied under the Rule.

Defendant also contends that the prosecution should have disclosed the pre–trial statements of various witnesses under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) which held that exculpatory evidence may not be withheld from an accused. In our case no such statements or witnesses were withheld from the accused as the exculpatory evidence was supplied to the defendant

during the testimony of each witness. No withheld, exculpatory evidence was discovered only after the defendant's conviction. Since all of the exculpatory evidence was brought out at trial there would be no reason to grant a new trial so that a new fact finder could hear the same evidence. See, *U. S. v. Kaplan*, 3 Cir., 554 F.2d 577 (1977). In any event, appellant made no request for *Brady* material, rather he petitioned for discovery under *Pa.R.Crim.P. 310*. The burden is upon the accused to place the prosecution on notice that a *Brady* request is being made. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Nonetheless the statements by witnesses here at issue were presented to the defense following the testimony of those witnesses. The defense was offered the opportunity to request a recess or continuance, and the prosecution indicated it would not object to such a request, in order to study the statements. No such request was made. Moreover, defense cross–examined based upon the statements provided him. Thus under the particular facts of this case appellant has shown no prejudice inuring to him as a result of the actions of the Commonwealth. Because the evil which the Supreme Court sought to avoid in *Brady* is not present in this case (i. e. denial by the prosecution, through suppression of exculpatory evidence, of an accused's right to fashion a defense utilizing evidence which tends to exculpate him), we hold that no *Brady* violation occurred here. Instantly, had defense counsel indicated he was not satisfied with the Commonwealth's midtrial disclosure, or had he indicated the defense was prejudiced thereby, I believe reversible error may have been committed. See, ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function, Sec. 3.11(a) (Approved Draft, 1971).

Defendant's next assignment of error is that reversible error occurred when a policeman testified on cross examination that ". . . recorded a very brief one page handwritten statement from a man who identified the defendant from a selection of photographs . . ." Defendant claims that the reference to a photographic identifica-

tion of him was impermissible error because from it the jury could infer prior criminal activity. If a testimonial reference to a photograph indicates to the jury that the accused has been involved in prior criminal activity, reversible error is committed. *Commonwealth v. Turner*, 454 Pa. 439, 311 A.2d 899 (1973). In our case no mention at all was made that defendant's photograph was a mug shot or that it came from police files. Furthermore, other testimony at trial established that prior to the arrest of defendant the police went to his grandmother's house and the jury could have inferred that the photograph of defendant was obtained at that time. Where there is no indication that photographs are "mug shots" or that they came from police files, it is not error for a witness to testify that he identified a defendant from photographs shown to him by the police. *Commonwealth v. Carlos*, 462 Pa. 262, 341 A.2d 71 (1975). Since nothing in the instant case indicated that the photographs of defendant connected him with prior criminal activity in any manner we hold that the passing reference to photographs of the defendant in the instant case was not error.

■■■ Defendant's final argument is that the court below erred when it refused defendant's request that it point out to the jury in its charge to the jury that a Commonwealth witness, one Daryl Brown, was unable to identify defendant. A review of the entire charge clearly indicates that the charge was fair. In those sections relating to the credibility of witnesses and identification testimony the jury was advised that they must *not* restrict such instructions solely to either the Commonwealth or the defense. Since the court below made it clear that its identification charge was directed at all of the identifying witnesses (of both the Commonwealth and the defense) the charge was fair, the refusal to charge the jury specifically on Daryl Brown was within the court's discretion, and no error was committed.

For all of the above reasons, judgment of sentence is affirmed.