J-S21005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD WELLS, | |
| Appellant | No. 2570 EDA 2013 |

Appeal from the Judgment of Sentence July 23, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005989-2008

BEFORE: BOWES, JENKINS, and PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 12, 2015**

Edward Wells appeals from the aggregate judgment of sentence of nine and one-half to twenty-two years incarceration after a jury found him guilty of aggravated assault, possession of an instrument of crime ("PIC"), carrying a concealed firearm without a license, and carrying a firearm on the public streets of Philadelphia. After careful review, we affirm.

On April 9, 2008, Appellant and two other men approached an individual named Jarrett Williams and shot at him. Appellant was wearing a hooded sweatshirt with his hood up and his cohorts were wearing ski masks. The victim, Ronald Green, was nearby at a local Chinese store. Mr. Green knew Appellant, who had lived in the area the previous summer. As Appellant approached him, Mr. Green asked Appellant if he was "Butter Roll," Appellant's nickname. Appellant responded in the affirmative and

---

\* Retired Senior Judge assigned to the Superior Court.

stated he had words for the victim. Appellant then raised his weapon and fired a shot at Mr. Green. Police responded to the area for shots fired. Mr. Green told police that "Butter Roll" shot at him and described him as being five foot five inches in height. Appellant is five foot five inches tall. In addition, Mr. Green and Mr. Williams both selected a photograph of Appellant as "Butter Roll."

Police arrested Appellant on April 10, 2008, and filed the original criminal complaint in this matter on April 11, 2008. The case was listed for trial on April 14, 2010, but was continued to the next day at the Commonwealth's request after three Commonwealth witnesses, including Mr. Green, failed to appear. Efforts to locate Mr. Green proved unsuccessful, and the court continued the case upon motion of the Commonwealth, with jury selection to begin on August 24, 2010. Appellant filed a Rule 600 motion, alleging that the Commonwealth had not timely brought Appellant to trial. The court denied that motion on August 24, 2010, and the parties selected eleven jurors that day. Still unable to locate Mr. Green, on August 25, 2010, the Commonwealth requested a continuance. Upon the court denying that request, the Commonwealth asked the court to *nolle prosse* the matter without prejudice. The trial court granted that request over Appellant's objection. Appellant appealed, arguing that the trial court erred in issuing a *nolle prosse* and declining to grant his Rule 600 motion.

This Court addressed Appellant's claim on the merits and affirmed, finding that no Rule 600 violation had occurred as of August 25, 2010. *Commonwealth v. Wells*, 50 A.3d 248 (Pa.Super. 2012) (unpublished memorandum). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on February 28, 2013. The record, then lodged with this Court, was returned to the trial court on April 10, 2013 and received by that court on April 11, 2013. However, prior to the physical record being returned to the court of common pleas, and over Appellant's objection, the court granted the Commonwealth's motion to vacate the *nolle prosse* on March 20, 2013. The court then scheduled a scheduling conference before a different judge for April 3, 2013. That judge then set this matter for trial on May 20, 2013.

Mr. Green and another witness, Nalene Gravely, failed to appear. The court issued bench warrants for those individuals and continued the case to the following day. Appellant renewed his motion to dismiss under Rule 600, and the court denied that request. The following day, the Commonwealth, having apprehended Mr. Green, asked for and received permission to hold him in custody as a material witness. Trial began that same date and concluded on May 23, 2013. At trial, Mr. Green denied that it was Appellant who fired the shot at him. The prosecution then introduced a signed written

statement Mr. Green provided to police in which he identified Appellant as the perpetrator and selected him from a photographic array as the shooter.

The jury found Appellant guilty of the aforementioned offenses.[1] The court sentenced Appellant to nine and one-half to twenty-two years imprisonment. Appellant filed a post-sentence motion, which the court denied. This timely appeal ensued. Appellant raises twenty-eight issues for our review.

1. Did the trial court err in ruling while the appellate courts still had the record from a previous appeal?

2. Did the trial court violate the due process and law-of-the-land clauses by making up her mind before argument?

3. Did the trial court deny Mr. Wells his constitutional rights to be present for the determination of the [C]ommonwealth's motion to vacate the judgment of *nolle prosequi*?

4. Did the trial court abuse its discretion in denying the weight of the evidence claim presented in ground 2 of the August 2, 2013, post-sentence motion?

5. Was the sentence (and denial of modification) an abuse of discretion?. [sic]

6. Did the sentencing court err in denying the merger claims, including constitutional challenges to Pennsylvania's statutory construction rules, as set forth in ground 4 of the August 2, 2013, post-sentence motion?

_____

[1] The jury acquitted Appellant of attempted murder.

7. Is consideration of a prior juvenile adjudication unconstitutional after *Alleyne v. United States*?

8. Did the sentencing court err in considering hearsay in the PARS report from 2006?

9. Did the trial court deny the defendant's rights under the state and federal constitutions to remain silent, and to the assistance of counsel, and violating his attorney-client privilege as to related communications, by conducting a colloquy regarding his decision to exercise his constitutional rights to a jury trial?

10. Did the sentencing court err in considering unproven allegations post-dating this alleged incident?

11. Did the trial court err in granting the continuance and denying the [R]ule 600(G) motion to dismiss where Ronald Green had been a reluctant witness for five (5) years.

12. Did the trial court err in striking venire person number 25 (Tanya Upchurch) for cause, when she made clear that allegations against her son and nephew would not affect her deliberations in this trial?

13. Did the trial court err in permitting any testimony at all about how Mr. Wells was arrested?

14. Did the trial court err in overruling the defendant's multiple objections to the prosecutorial misconduct in opening to the jury with unsubstantiated claims of witness intimidation and retaliation?

15. Did the trial court err in overruling the hearsay objection to Anthony Comitalo testifying about the out-of-court statements of Ronald Green?

16. Did the trial court err in overruling the defendant's relevance objection to Ronald Green's testimony about whether people in the neighborhood like it when people testify?

17. Did the trial court err in overruling the hearsay objection to Robert Donnelly's testimony about the out-of-court statements of Jarrett Williams?

18. Did the trial court err in overruling the hearsay objection to Jarret Williams testifying to anything Ronald Green told him?

19. Did the trial court err in overruling the hearsay objection to exhibits C-1 through C-9?

20. Did the trial court err in denying the constitutional challenge under article V, section 10(c), to 18 Pa.C.S.A. § 6104 and any jury instruction based thereon?

21. Did the trial court err in denying the prudential challenge to a § 6104 charge.

22. Did the trial court err in overruling the defense objection to instructions regarding Jarrett Williams.

23. Did the trial court err in ruling that Mr. Wells's juvenile adjudication would be admitted if Mr. Wells took the stand to testify?

24. Did the trial court err in overruling the objection the prosecution's closing argument, without any evidence, as to what Ronald Green "knows" and "can't tell" the jury, and referring to a "snitch"?

25. Did the trial court err in overruling the objection to the prosecutor's personal vouching in his closing argument?

26. Did the trial court err in overruling the objection to the prosecutor's unsubstantiated "code of the street" argument?

27. Did the trial court violate the public trial right of the [S]ixth [A]mendment by closing the courtroom doors during a short jury charge?

28. Was the evidence insufficient for any VUFA offense because there was no evidence of barrel length?

Appellant's brief at 2-4.

Although Appellant raises twenty-eight issues, most of his claims are waived due to insufficient development. Specifically, Appellant's issues four through six, issues eight through ten, issues twelve through nineteen, issues twenty-one and twenty-two and issues twenty-four through twenty-six are all waived. We address the grounds for waiver of those claims in more detail *infra*. Appellant has developed argument for his first three issues and issues seven, eleven, twenty-three and twenty-eight. In addition, his twenty-seventh issue, though not thoroughly developed, does cite to pertinent legal authority. We begin with Appellant's initial claim.

Appellant maintains that the trial court lacked jurisdiction to enter an order vacating its earlier *nolle prosse* and reinstating the criminal charges against him. Specifically, he asserts that, because the physical record had not been returned to the trial court after the Pennsylvania Supreme Court denied allowance of appeal, the trial court did not yet have jurisdiction and its order was void. From this premise, he asserts that the trial proceedings that occurred while the court had jurisdiction are null and void.

In support, Appellant relies on Pa.R.A.P. 1763, Pa.R.A.P. 2571(a)(5), Pa.R.A.P. 2572(e), Pa.R.A.P. 2591(a), and a long line of decisional law holding that a trial court lacks jurisdiction to act when the record is with an appellate court. **Commonwealth v. Salley**, 957 A.2d 320 (Pa.Super.

2008); ***Stanton v. Lackawanna Energy, Ltd.***, 915 A.2d 668 (Pa.Super. 2007); ***Bell v. Kater***, 839 A.2d 356 (Pa.Super. 2003); ***Corace v. Balint***, 210 A.2d 882 (Pa. 1965); ***Gilbert v. Lebanon Valley St. Ry. Co.***, 154 A. 302 (Pa. 1931); ***Drabant v. Cure***, 118 A. 30 (Pa. 1922); ***Baldwin's Appeal***, 5 A. 732 (Pa. 1886); ***Ewing v. Thompson***, 43 Pa. 372 (1862).

Rule 1763 does not apply to the specific facts of this case. By way of analogy, however, Appellant points out that jurisdiction is returned to a lower court when the record is received by that court. Specifically, Rule 1763 provides in relevant part, "Unless otherwise ordered pursuant to this chapter, upon the remand of the record in any matter in which the judgment of sentence was affirmed a defendant who has been released pending appeal shall appear in the lower court at such time as the defendant may be there called[.]"

In addition, Rule 2571(a)(5) reads, "The record, as remanded to the lower court or other tribunal, shall consist of the record as certified to the appellate court and, unless the appellate court shall otherwise order, a certified copy of: In a criminal matter, a copy of the docket entry under Rule 2572(e) (docket entry of remand)." Rule 2572(e) sets forth that, "The prothonotary of the appellate court shall note on the docket the date on which the record is remanded and give written notice to all parties of the date of remand." Further, Rule 2591(a) provides, "On remand of the record

- 8 -

the court or other government unit below shall proceed in accordance with the judgment or other order of the appellate court and, except as otherwise provided in such order, Rule 1701(a) (effect of appeals generally) shall no longer be applicable to the matter."

Pa.R.A.P. 1701(a) sets forth, "Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Rule 1701(a), of course, was merely a codification of well-ensconced common law principles. *Gilbert*, *supra* at 304 ("At common law, a court of first instance was without jurisdiction to proceed with a cause after the record thereof had been removed to an appellate court (*Kountze v. Omaha Hotel Co.*, 107 U.S. 378, 381; *Sheerer v. Grier*, 3 Wh. 14; 2 R.C.L. 122), for the obvious reason that it had no record upon which it could proceed."); *Harwood v. Bruhn*, 170 A. 144 (Pa. 1934); *Drabant*, *supra* at 30 ("while the record of the case was under the control of this court, the only power existing in the court below was to comply with our order."); *Ewing*, *supra* at 376-37; *see also Commonwealth v. Hollis*, 450 A.2d 70 (Pa.Super. 1982).

Most recently, in *Salley*, *supra*, this Court decided an earlier appeal by remanding for resentencing on August 3, 2007. Prior to the record being returned to the trial court, the court resentenced the defendant on August

17, 2007. The defendant alleged in his subsequent appeal that the trial court lacked subject matter jurisdiction because the Superior Court had not yet remanded the record. Discussing Pa.R.A.P. 2572(a)(2) and Pa.R.A.P. 2591, this Court agreed, holding that "Rule 2591, thus, authorizes a trial court to proceed with the directives of the appellate court **after** remand of the record." *Salley*, *supra* at 323 (emphasis in original).

The *Salley* Court relied principally on *Stanton*, *supra*. In *Stanton*, parents of an injured child sued a power company. The power company filed a motion for summary judgement, which the trial court denied. The company filed a petition for permission to appeal, which this Court granted. The panel, on February 26, 2003, concluded that the trial court erred in denying the motion. Five days after that decision, on March 3, 2003, and before the record was returned to the trial court, the court entered an order granting the company's motion for summary judgment. The parents, however, filed a petition for allowance of appeal fifteen days after this Court filed its opinion. This appeal stayed the return of the record to the trial court. Our Supreme Court ultimately granted that appeal and affirmed on November 23, 2005. However, in doing so, the High Court noted an issue remained to be decided.

Again, before the record was returned, on December 3, 2005, the trial court purported to grant the power company's summary judgment motion.

In the subsequent appeal to this Court, we held both the March 2003 and December 2005 orders granting summary judgment were void because the trial court lacked jurisdiction. Ultimately, we quashed the appeal as premature. In finding that the trial court lacked jurisdiction, the **Stanton** Court relied on **Bell**, **supra**, **Commonwealth v. Bishop**, 829 A.2d 1170 (Pa.Super. 2003), and Pa.R.A.P. 1701, 2572, and 2591.

In **Bell**, Andrea Kater struck Edward Bell with her car in a parking lot. The case proceeded to trial and the jury returned a verdict in favor of Bell and his wife in the amount of two million dollars. Kater filed a post-trial motion that the court denied on November 1, 2002. The court entered judgment that same day and Kater filed an untimely appeal to this Court on December 3, 2002. The next day, Kater also filed with the trial court a petition requesting the reinstatement of her appellate rights *nunc pro tunc*. The court granted that petition on January 15, 2003. That same day, this Court quashed Kater's original appeal. Thereafter, on January 27, 2003, Kater filed a second notice of appeal. This Court quashed the appeal as untimely. In doing so, we reasoned that the trial court lacked jurisdiction to enter the order reinstating Kater's appellate rights because at that time the record was with the Superior Court due to her original appeal. The **Bell** panel relied on Pa.R.A.P. 1701 and **Bishop**, **supra**.

The ***Bishop*** case involved a PCRA matter and request for bail. A Superior Court panel initially reversed the denial of PCRA relief and awarded Bishop a new trial on March 1, 2002. The Commonwealth sought allowance of appeal. Before the Supreme Court decided that petition, Bishop filed a petition seeking a bail hearing and bond. The PCRA court denied that petition on August 9, 2002, based on its lack of jurisdiction. We affirmed. Specifically, the ***Bishop*** Court ruled that based on Rule 1701, until the record was remanded to the PCRA court, the lower court lacked jurisdiction to act.

Despite this overwhelming body of law, the Commonwealth initially responds that the physical record was "unnecessary to resolve any issues underlying the lifting of the *nolle prosequi*[.]" Commonwealth's brief at 11. It also contends that Appellant's original interlocutory appeal was not properly before this Court and argues that ***Commonwealth v. Rega***, 856 A.2d 1242 (Pa.Super. 2004), was wrongly decided. Where an appeal is improper, the trial court may not lose jurisdiction. ***See Commonwealth v. McPherson***, 533 A.2d 1060, 1062 (Pa.Super. 1987); Pa.R.A.P. 1701(b)(6); ***but see Commonwealth v. Hall***, 476 A.2d 7, 9-10 (Pa.Super. 1984).

The prior panel in this matter relied on ***Rega*** in reaching the merits of Appellant's appeal. The ***Rega*** panel concluded that an interlocutory appeal from the entry of a Rule 600 claim was properly before it based on the

Pennsylvania Supreme Court decision in ***Commonwealth v. Reinhart***, 353 A.2d 848 (Pa. 1976). ***Reinhart*** involved a constitutional speedy trial challenge after the entry of a *nolle prosse* and not Rule 600 or its predecessor Rule 1100. The Commonwealth, as it did in the prior appeal, argues that ***Rega*** incorrectly extended ***Reinhart***. Accordingly, it posits that the law of the case doctrine should not apply and the trial court never lost jurisdiction in the first instance.

The Commonwealth continues that, despite the trial court not possessing the record, the trial court was not precluded from "lifting the *nolle prosse* as [Appellant] had no further avenue for review." Commonwealth's brief at 15. It notes that Appellant did not raise any federal constitutional issues in the previous appeal and could not have sought review with the United States Supreme Court.[2] Further, the deadline for requesting the Pennsylvania Supreme Court to reconsider its denial of allowance of appeal had passed. According to the Commonwealth, under Pennsylvania law, a *nolle prosse* can be retracted at any time.

---

[2] Appellant in his reply brief erroneously maintains that he could have successfully sought a writ of *certiorari* with the United States Supreme Court. However, Appellant's only issue in his original appeal to this Court was specific to Rule 600. He did not raise a separate federal constitutional speedy trial right claim. The United States Supreme Court has no jurisdiction to consider purely state law rulings.

- 13 -

The Commonwealth also distinguishes *Salley*, *Stanton*, and *Bell*. It points out that in *Salley*, this Court had vacated a judgment of sentence and remanded for resentencing and in *Stanton* had reversed the denial of summary judgment and remanded. The courts then took action relative to sentencing and the entry of summary judgment before the record was returned. The Commonwealth submits that it is significant in this case that this Court had affirmed the trial court's order in the prior appeal and was "not required to correct an improper order[.]" Commonwealth's brief at 17. With respect to *Bell*, the Commonwealth maintains that the decision therein precluded the trial court from entering an order during a pending and undecided appeal. It posits that the trial court order here did not interfere with a pending appeal.

Lastly, the Commonwealth argues that even if the trial court lacked jurisdiction at the time it entered the order reinstating the charges against Appellant, the remedy of a new trial is not required. The Commonwealth submits that any error was harmless because the trial occurred when the court did have jurisdiction. It analogizes a defect in the removal of a *nolle prosse* to a defect at a preliminary hearing. The Commonwealth reasons that the purpose of a preliminary hearing and reinstating charges is to provide notice that the defendant will proceed to trial. Thus, "a defect in the

proceeding that did not undermine the notice should not result in reversal." Commonwealth's brief at 18.

Instantly, we agree with Appellant that generally a court loses jurisdiction over a matter after a party files an appeal. Pa.R.A.P. 1701(a). The court resumes jurisdiction once the record has been remanded and is in the possession of the trial court. *See* Pa.R.A.P. 2591; *Salley*, *supra*; *Stanton*, *supra*; *Bell*, *supra*; *Bishop*, *supra*; *Gilbert*, *supra*; *Drabant*, *supra*; *Ewing*, *supra*. Here, contrary to the Commonwealth's positions, the trial court did not have jurisdiction to enter the order lifting the *nolle prosse* at the time it filed the order. *See id*. However, the question is whether the court's lack of jurisdiction when it entered the order reinstating the charges requires a new trial where the court clearly had jurisdiction at the time of trial. Appellant's position is that since the order lifting the *nolle prosse* is null, no charges were pending at the time of the trial and the trial itself was void. We disagree.

Since Appellant was arraigned and tried after jurisdiction returned to the trial court, we find that the error in reinstating Appellant's charges prior to the physical return of the record does not warrant a new trial. Although the initial order lifting the *nolle prosse* was a legal nullity when it was entered, the subsequent arraignment of Appellant on the same charges when the court had jurisdiction effectively reinstated those criminal counts

against him. None of the cases relied on by Appellant involved the entry of an interlocutory order without jurisdiction followed by a subsequent trial that transpired when the court had jurisdiction. Hence, those cases do not compel reversal.

Appellant's second issue is that the trial court denied him due process under the Pennsylvania and federal constitutions by lifting the *nolle prosse*. He argues that the trial court's statement prior to his argument that counsel "can argue all he wants; I'm lifting it[,]" shows that the court had decided the Commonwealth's motion before hearing his position. Appellant's brief at 11 (citing N.T., 3/20/13, at 3). In support, he relies on **Commonwealth v. Lowery**, 419 A.2d 604 (Pa.Super. 1980), and **Commonwealth v. Richman**, 1 A.2d 578 (Pa.Super. 1938).

**Lowery**, however, does not aid Appellant. Relevant hereto, the defendant claimed that the trial court had demonstrated bias during a suppression hearing by determining that the defendant's testimony was incredible prior to counsel's argument at that hearing. Lowery alleged that the court erred in making its decision before listening to counsel's closing suppression argument. We rejected the defendant's position, opining, "The court may have expressed doubts about defendant's credibility at side-bar but we have no record of what was actually said. More importantly[,] the

- 16 -

court did not forbid the defendant's counsel from presenting oral argument . . . . nor did it discourage oral argument[.]" *Lowery*, *supra* at 610.

*Richman* is also inapposite. There, the defendant was on trial for receiving stolen property. The defendant was a pawnbroker who purchased a stolen watch. During the course of the trial, before the defendant had completed calling his witnesses, the trial court commented, "I do not understand counsel or the defendants in this case. If you want me to sit as a judge and jury and ask me to believe testimony like that you are making a big mistake. I am telling all of you that. Think of it, a boy like that walks into a pawnshop and a transaction takes place and you want me to believe the man did not know it was stolen?" *Richman*, *supra* at 579. We concluded that the trial judge's determination of guilt prior to the completion of the trial was error.

In this case, as the Commonwealth points out, the trial court permitted Appellant to present his arguments. It contends that because Appellant was given an opportunity to object and set forth his positions, Appellant was not deprived of due process. We agree. Generally, our courts have maintained that federal and state due process claims are coextensive. *Commonwealth v. Sims*, 919 A.2d 931, 941 n.6 (Pa. 2007). Although the Pennsylvania Constitution does not utilize the term "due process," the phrase "law of the land," used in Article I, § 9, is synonymous with that

term. *Craig v. Kline*, 65 Pa. 399, 413 (1870); *Murray v. Hoboken Land & Imp. Co.*, 59 U.S. 272, 276 (1855); *see also Commonwealth v. Kratsas*, 764 A.2d 20, 49 n.5 (2001); *Commonwealth v. Rose*, 81 A.3d 123, 126 n.2 (Pa.Super. 2013), *allowance of appeal granted on other ground*, 95 A.3d 274 (Pa. 2014); *Commonwealth v. Harrell,* 65 A.3d 420, 448 n.10 (Pa.Super. 2013) (Donohue, J., dissenting)).

The hallmarks of due process are notice and an opportunity to be heard. *Fiore v. Bd. of Fin. & Revenue*, 633 A.2d 1111, 1114 (Pa. 1993) ("due process 'requires at a minimum that the deprivation of life, liberty or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"). Since Appellant was given both notice and the opportunity to present his arguments, we find that the trial court did not deny him due process for the reasons argued, *i.e.*, purportedly deciding the Commonwealth's request before Appellant articulated his objections.[3] *See Lowery*, *supra*.

The third issue Appellant levels on appeal is that the trial court denied him his constitutional right to be present at the hearing on the Commonwealth's motion to vacate the *nolle prosse*. Appellant argues that the motion to lift the *nolle prosse* was a critical stage of the criminal

---

[3] Appellant does not advance a due process position based on the trial court's lack of jurisdiction.

prosecution. He then collects an array of cases, none of which involve a motion to reinstate charges after a *nolle prosse*, for the settled proposition that a defendant must be present during critical stages of a criminal case.

The Commonwealth responds that the hearing to reinstate the charges was not a critical stage of the prosecution. It maintains that Appellant could not preserve or lose substantive rights at the proceeding, nor was the hearing related to defending against the charges. Accordingly, it asserts that a hearing to lift a *nolle prosse* is not required and Appellant was not constitutionally entitled to be present.

We have already determined that the trial court acted without jurisdiction at the challenged hearing. Thus, its actions were a legal nullity at that time. Nonetheless, Appellant was present when he was arraigned and at trial. Therefore, even assuming *arguendo* that Appellant should have been present, his absence did not result in prejudice warranting a new trial. *Cf. Commonwealth v. Lyons*, 568 A.2d 1266 (Pa.Super. 1989) (absence of preliminary hearing, which is considered a critical stage of the prosecution, due to unavailability of defendant, did not require a new trial where no prejudice could be shown).

Appellant's fourth and fifth issues are waived. The entirety of Appellant's argument on his fourth claim is that "[t]he court abused its discretion in denying the weight of the evidence presented in ground 2 of the

August 2, 2013, post-sentence motion, which is incorporated by reference." Appellant's brief at 14. Incorporation by reference is improper. ***Commonwealth v. Briggs***, 12 A.3d 291, 342 (Pa. 2011). Similarly, Appellant's fifth issue reads "[d]enial of the motion to modify sentence (and impose that sentence initially), as set forth in ground 3 of the August 2, 2013, post-sentence motion, which is incorporated herein by reference." Appellant's brief at 14. For the same reason that his prior argument is waived, this issue fails.

In his sixth position raised on appeal, Appellant provides at least a citation to case law after attempting to incorporate his arguments below by reference. Appellant maintains that, based on Chief Justice Castille's concurring opinion in ***Commonwealth v. Baldwin***, 985 A.2d 830 (Pa. 2009), Pennsylvania's merger statute violates the separation of powers doctrine and the double jeopardy clause of the Pennsylvania Constitution. In this latter regard, Appellant maintains that Pennsylvania's prohibition against double jeopardy precludes multiple sentences even where the merger statute would not prohibit such sentences.

While Appellant cites to a non-binding concurring opinion in ***Baldwin***, he fails to develop any comprehensive argument on the claim. As noted, his attempt to incorporate by reference arguments made in the trial court is improper appellate advocacy. Moreover, in ***Commonwealth v. Wade***, 33

A.3d 108, (Pa.Super. 2011), this Court rejected a claim that the merger statute violated Pennsylvania's constitutional prohibition against double jeopardy. In addition, since Appellant has not adequately developed his separation of powers argument, his claim does not entitle him to relief. **See Wade**, **supra** (holding that failure to develop separation of powers position relative to merger statute resulted in issue failing).

The seventh claim Appellant forwards on appeal is that the trial court's consideration of his prior juvenile adjudication at sentencing is unconstitutional following the United States Supreme Court's decision in **Alleyne**, **supra**. The Supreme Court in **Alleyne** held that the federal jury trial right requires facts necessary to increase a mandatory minimum sentence, except prior convictions, to be proven beyond a reasonable doubt. In this case, Appellant was not sentenced based on a mandatory minimum statute involving his prior juvenile adjudication. **Alleyne** has no application. Further, this Court has held that prior juvenile adjudications may be considered in sentencing a defendant within a permissible range of sentences. **See Commonwealth v. Hale**, 85 A.3d 570, 585 (Pa.Super. 2013) *allowance of appeal granted on other ground*, 2014 Pa. LEXIS 1623. Since consideration of Appellant's juvenile adjudication did not result in an increased mandatory sentence, his claim is without merit.

Appellant's eighth, ninth, and tenth issues are waived due to his failure to develop those positions. Specifically, Appellant in advancing his eighth claim baldly states that the court erred in considering hearsay in a PARS report during sentencing. He provides no argument and his position is contained in one incomplete sentence. Furthermore, Appellant's position relates to the discretionary aspects of his sentence and he has utterly neglected to follow the applicable rules for presenting such claims. Finally, the only citation to authority Appellant provides relates to a trial court's use of a *nolle prossed* charge to increase the defendant's sentence. Appellant's brief at 15 (citing **Commonwealth v. Stewart**, 867 A.2d 589 (Pa.Super. 2005)). As Appellant has completely failed to develop his position, the issue is waived.

The ninth claim Appellant raises is that the trial court denied him his state and federal constitutional rights to remain silent and the assistance of counsel and violated his attorney-client privilege by conducting an on-the-record colloquy regarding his decision to proceed to trial on a separate rape charge. Appellant has not set forth a single case in support of his untenable assertions. The sole citation he provides is to **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), which relates to deferral of ineffectiveness claims to collateral review. Appellant's position is frivolous.

In his tenth issue, Appellant's entire argument is that "[t]he sentencing court erred in considering unproven allegations post-dating this alleged incident." Appellant's brief at 16. Accordingly, his claim is waived and fails due to the lack of advocacy and citation to authority.

Appellant's next claim is that the trial court erred in denying his Rule 600(G) motion after remand. Appellant acknowledges the law of the case doctrine and our prior ruling relative to his original Rule 600(G) motion. However, he contends that based on this Court's earlier decision, as of the date the trial court granted the *nolle prosse*, the Commonwealth had 39 days to try him. Omitting the period between the grant of the *nolle prosse* on August 25, 2010, and the filing of his earlier appeal, as well the period between March 15, 2013 and April 10, 2013, when the court did not have jurisdiction, Appellant posits that forty days elapsed between April 10, 2013 and May 20, 2013.

The Commonwealth responds that Appellant's newest Rule 600 claim is waived because Appellant failed to supply the notes of testimony from the May 20, 2013 hearing on the issue. Further, it contends that Appellant has waived his position because the written motion he filed on May 20, 2013, was "hopelessly vague, asserting only that the Commonwealth lacked due diligence but specifying no continuance or other delay attributable to the Commonwealth." Commonwealth's brief at 34. The Commonwealth also

disputes Appellant's issue on the merits. Relying on former Rule 600(D)(2) and **Commonwealth v. Sisneros**, 692 A.2d 1105 (Pa.Super. 1997), it submits that a new 365 day period began from when the trial court lifted the *nolle prosse*.

Rule 600(D)(2) did provide that, upon remand from an appellate court, the Commonwealth has 120 days to try a defendant who is incarcerated and 365 days to try the case if the defendant is on bail. In **Sisneros**, the defendant had twice successfully appealed his judgment of sentence. After his second successful appeal, this Court remanded for a new trial concluding that his guilty plea was not knowing, intelligent and voluntary. The defendant filed a Rule 1100 motion for discharge, which was denied. He then entered a guilty plea and was again sentenced, but failed to appeal. This Court then reversed the lower court's failure to reinstate the defendant's appeal rights. In Sisneros' reinstated direct appeal, we decided that the failure to retry the defendant within 120 days of the date of the remand after his second appeal did not compel reversal. Rather, the **Sisneros** Court opined that, after 120 days, the defendant was subject to be released on nominal bail, but the Commonwealth had 365 days to try the case.

This case is materially different from **Sisneros** insofar as the case was not remanded to be tried. Moreover, Appellant was neither released on bail

nor incarcerated on the case because the charges had been *nolle prossed*. Hence, Rule 600(D)(2) did not apply. We find this situation more akin to the scenario in which the Commonwealth withdraws a complaint and files a second complaint. **Cf. Peterson**, **supra**; **see also Commonwealth v. Meadius**, 870 A.2d 802 (Pa. 2005).

In this case, the Commonwealth withdrew the charges. Although it did not re-file those charges via a second complaint, its motion to lift the *nolle prosse* was intended to have the same effect. The critical inquiry where charges have been reinstated is whether the Commonwealth exercised due diligence in prosecuting the original complaint. **Meadius**, **supra**; **compare also Peterson**, **supra**. Where the Commonwealth exercises due diligence during the initial prosecution, the clock is restarted when charges are reinstituted. **Peterson**, **supra**. In contrast, the Commonwealth cannot evade Rule 600 by withdrawing charges and refiling when it has not acted with diligence in the first instance. **See Peterson**, **supra** at 1140 n.14. This Court in our prior panel decision held that the Commonwealth exercised diligence and made reasonable efforts in its attempt to produce Mr. Green. Accordingly, we find that the clock was reset upon the Commonwealth's

attempt to re-file the charges.[4]  Since Appellant was brought to trial well within 365 days of the Commonwealth's request to reinstate the charges, no Rule 600 violation occurred.

As with so many of Appellant's claims, issues twelve through nineteen are waived.  The twelfth position set forth by Appellant is that the court erred in striking a venire person for cause.  He cites no case law or legal authority in support.  Appellant's inadequate development is fatal.  Similarly, Appellant's thirteenth issue is waived as the entire argument is, "[t]he trial court erred in permitting any testimony at all about how Mr. Wells was arrested."  Appellant's brief at 19-20.  Issue fourteen fares no better, although Appellant offers two sentences in support thereof.  Appellant's fifteenth claim is a one sentence assertion that "[t]he trial court erred in overruling the hearsay objection to Anthony Comitalo testifying about the out-of-court statements of Ronald Green."  Appellant's brief at 20.

The sixteenth issue Appellant avers is also one sentence:  "The trial court erred in overruling the defendant's relevance objection to Ronald

---

[4] We are aware that Rule 600 would not generally begin to run before jurisdiction returned to the trial court.  **See Commonwealth v. Sisneros**, 692 A.2d 1105 (Pa.Super. 1997) (discussing date of remand).  However, we agree with Appellant to the limited extent that the Commonwealth is estopped from arguing that such a period cannot count against it when it was vigorously attempting to begin the prosecution despite the trial court's lack of jurisdiction.

Green's testimony about whether people in the neighborhood like it when people testify." *Id*. Appellant's seventeenth, eighteenth, and nineteenth "arguments" are also devoid of citation to legal case law and are, respectively, one, two, and one sentence boilerplate statements. Those claims, therefore, do not entitle him to relief.

Appellant does develop an argument relative to his twentieth position. According to Appellant, the trial court erred in not finding that 18 Pa.C.S. § 6104 and the jury instruction relative thereto violate the Pennsylvania's Supreme Court's rule-making authority. Section 6104 provides:

> In the trial of a person for committing or attempting to commit a crime enumerated in section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms), the fact that that person was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of that person's intention to commit the offense.

18 Pa.C.S. § 6104. Appellant avers that Article V, § 10 of the Pennsylvania Constitution confers exclusive procedural rule-making authority with the Pennsylvania Supreme Court. He maintains that § 6104 is a procedural evidentiary rule, which the legislature had no authority to pass. The Commonwealth counters that the statute is substantive because it defines conduct necessary to prove intent. Article V § 10(c) provides, in relevant part, as follows:

> (c) The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts,

justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the judicial branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. . . .

Thus, the Pennsylvania Constitution has expressly authorized our Supreme Court to promulgate rules governing the practice, procedure, and conduct of all of the courts in the Commonwealth. *See also Commonwealth v. McMullen*, 961 A.2d 842, 847 (Pa. 2008) ("T[he] [Supreme] Court retains exclusive rule-making authority to establish rules of procedure.").

The Pennsylvania Supreme Court has defined procedural and substantive law by opining, "substantive laws are those which affect rights, while procedural laws are those which address methods by which rights are enforced. The demarcation between substantive and procedural laws is, however, at times shadowy and difficult to determine." *Morabito's Auto Sales*, 715 A.2d 384, 386 (Pa. 1998) (internal citations omitted); *see also Commonwealth v. Estman*, 915 A.2d 1191, 1195 (Pa. 2007) (quoting *Commonwealth v. Morris*, 771 A.2d 721, 738 (Pa. 2001), and stating, "substantive law is that part of the law which creates, defines and regulates

rights, while procedural laws are those that address methods by which rights are enforced.").

We add that our Supreme Court in **Commonwealth v. Fisher**, 741 A.2d 1234, 1241 (Pa. 1999), declared that a statutory provision relative to aggravating factors for the death penalty statute was not substantive; however, it did not declare the law to be an unconstitutional invasion of its procedural rule-making authority. Importantly, the Supreme Court has *sua sponte* ruled that statutes unconstitutionally violate its rule-making power. **In re Suspension of Capital Unitary Review Act**, 722 A.2d 676 (Pa. 1999). Therefore, it is immaterial whether or not a party raises this concern before that Court.

To the extent Appellant suggests that a statutory provision that operates in a procedural manner can never be passed by the legislature, we believe that position is legally untenable. **See Fisher**, **supra**. Here, we find that § 6104 is not purely procedural. The law defines a means of establishing an element of a crime charged. Therefore, it is substantive in nature. The legislature had authority to pass § 6104.

Appellant's twenty-first and twenty-second issues are waived for the same reasons outlined with respect to issues twelve through nineteen. The twenty-third position Appellant advances is that the trial court erred in authorizing the Commonwealth to introduce Appellant's juvenile adjudication

for hindering apprehension if he elected to testify. Appellant's argument is cursory. He maintains that the hindering apprehension adjudication was for a violation of 18 Pa.C.S. § 5105(a)(4),[5] which has been held not to be a *crimen falsi* crime. **See Commonwealth v. Harris**, 658 A.2d 811 (Pa.Super. 1995). In addition, in a fundamental misunderstanding of the case law, he asserts that use of the hindering apprehension charge violates **Alleyne**.

The Commonwealth rejoins that Appellant was not adjudicated for a violation of § 5105(a)(4). Instead, the trial court ruled that the juvenile petition in question alleged that Appellant intimidated or attempted to intimidate a witness in a homicide by instructing the witness to alter his testimony. The Commonwealth submits that these facts supported an adjudication under § 5105(a)(3), which is a *crimen falsi* crime. **See Harris**, **supra** at 813-814 (stating in *dicta* that § 5105(a)(1)-(3), and (5) are *crimen falsi* crimes). With respect to Appellant's **Alleyne** claim that because a juvenile adjudication is not a conviction it cannot be introduced at trial, the Commonwealth contends that the issue is waived because Appellant did not object on this ground.

---

[5] At trial, Appellant objected to an adjudication "as to a 6105 juvenile matter." N.T., 5/23/13, at 22. This appears to have been an inadvertent slip, as immediately prior the parties had been discussing 18 Pa.C.S. § 6104 and 6105, relative to a jury instruction.

*Alleyne*, of course, has no application regarding admission of a juvenile adjudication where the evidence does not mandatorily increase the individual's sentence. For this reason, it is unnecessary to decide whether a juvenile adjudication falls under the *Apprendi/Alleyne* prior conviction exception to those cases. Moreover, Appellant's citation to Justice Scalia's dissent in *Almendarez-Torres v. United States*, 523 U.S. 224, 248 (1998), betrays his understanding of the law. Justice Scalia therein was opining that, to be in accord with the jury trial right, prior convictions must be introduced and proven beyond a reasonable doubt if they increased the defendant's maximum sentence. Thus, the case law Appellant relies on actually supports the opposite result if the prior adjudication automatically increases the defendant's sentence.

Further, we agree with the Commonwealth that Appellant's prior juvenile adjudication was for violating 18 Pa.C.S. § 5105(a)(3), and would have been admissible to impeach his testimony as *crimen falsi* evidence. The record contains the juvenile petition in question. The petition did not specify which subsection of § 5105 was applicable. However, the delinquent act was described as follows:

> On or about 7/12/06 while at or near 1301 Filbert Street, the Defendant, with the intent to hinder the apprehension, prosecution, conviction or punishment of another charged with murder, the Defendant did intimidate/attempt to intimidate/retaliate against the complainant, [D.O.], by

> repeatedly approaching him in the courtroom and telling him to change his testimony.

Juvenile Petition, 7/12/06.

At an August 24, 2010 hearing, the court concluded that the allegations, which Appellant admitted, did not fall under § 5105(a)(4), and plainly were encompassed by § 5105(a)(3). Section 5105(a)(4) prohibits a person from "warn[ing] the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law[.]" 18 Pa.C.S. § 5105(a)(4). It is beyond cavil that this subsection does not apply. In contrast, § 5105(a)(3) makes it illegal to conceal or destroy evidence of a crime, or tamper "with a witness, informant, document or other source of information, regardless of its admissibility in evidence." 18 Pa.C.S. § 5105(a)(3). The trial court did not err.

Appellant's next three claims are waived due to inadequate development. In issue twenty-seven, although Appellant offers only a one sentence argument, he does cite to non-binding case law from other jurisdictions. He posits that the trial court violated his right to public trial by closing the courtroom doors during its jury instruction. Nonetheless, he does not develop his argument in any meaningful fashion. We will not do his work for him. This claim fails.

The final claim Appellant levels on appeal is to the sufficiency of the evidence relative to his carrying an unlicensed firearm and carrying a firearm on the public streets of Philadelphia charges. Specifically, Appellant contends that the Commonwealth did not establish the length of the barrel of the firearm. The Commonwealth replies that the jury could have inferred that Appellant used a handgun based on the evidence it received and that the weapon used was less than twenty-six inches in length.

In conducting a sufficiency of the evidence review, we view all of the evidence admitted, even improperly admitted evidence. **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We consider such evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. **Id**. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. **Id**.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." **Id**. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. **Id**. This Court is not

permitted "to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*.

Here, the Commonwealth introduced into evidence Mr. Green's statement to police after he testified and denied that Appellant was the culprit. In his statement to police, Mr. Green was asked what type of gun Butter Roll possessed and he responded, "All I know, it was a black handgun." N.T., 5/22/13, at 118. The jury could have reasonably determined from this testimony and the remaining testimony that the weapon was not a rifle or a gun in excess of twenty-six inches. Appellant's issue does not entitle him to relief.

Judgment of sentence affirmed.

Judge Jenkins joins the memorandum.

Judge Platt concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2015